**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

AC, a minor, by and through RC,
　　As parent and next friend,

　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　Case No.: 3:22-cv-00336

HENRICO COUNTY SCHOOL BOARD

　　　　Defendant.

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant Henrico County School Board (the "School Board") states the following in support of its motion to dismiss filed in state court as Demurrer and Motion to Dismiss for Failure to State a Claim.

### Factual Allegations

Plaintiff AC is a minor child who attended schools operated by the School Board. Compl. ¶ 1. She is ten years old and has average ability, but performs "at below grade level for reading, spelling, phonological awareness, and math because of her diagnosed disabilities including Dyslexia, Attention Deficit Hyperactivity Disorder (ADHD) and Auditory Processing Disorder." Compl. ¶ 4.

In March 2019, two months after AC started attending the defendant's Pinchbeck Elementary School, the defendant identified AC as having "Hyperactivity/Impulsivity, Learning/Executive Functioning and Inattention", which are associated with ADHD, determined that she needed "specially designed instruction", and recommended that she be given a Section 504 Plan, but found that she "did not meet the threshold for needing exceptional education

1

support." Compl. ¶¶ 5-11. In so doing, the defendant inflated her test scores and "failed to appropriately assess AC's eligibility under IDEA for an IEP[1]." *Id.*

After AC's parents asserted that AC needed an IEP, the defendant held an eligibility meeting with AC's parents on May 9, 2019, determined that AC needed special education because of her ADHD, and decided to develop an IEP at the end of the 2019 school year. Compl. ¶¶ 12-14. The defendant scheduled the IEP meeting for June 25, 2019 and "refused to reschedule" it even though AC's parents were not available on that date. Compl. ¶¶ 17-18. The resulting IEP "provided a goal for reading comprehension and a goal for math word problems", but "did not identify special education or related services" or "provide for a Least Restrictive Environment." Compl. ¶¶ 19-20.

In July 2019, a literacy screening for AC indicated that she had dyslexia and that she should meet with a tutor two times a week and receive reading remediation at school. Compl. ¶¶ 22-24. AC's parents shared this information with the defendant and met with an IEP team on August 29, 2019, but the defendant's IEP team refused to consider the information and refused to forward it to the defendant's dyslexia advisor. Compl. ¶¶ 25-27. The IEP team also refused various other requests on or about August 29, 2019, including a request that decoding, spelling and written language be provided as a part of AC's measurable goals, that the Orton Gillingham approach be used, that additional data be included to help monitor AC's progress, that AC's fluency goal be increased to 120 words correct per minute, and that the team provide a peer-reviewed program to fit AC's reading needs. Compl. ¶¶ 28-38. The plaintiff claims that defendant's staff "exhibited resentment" and displayed "adversarial conduct" during this process. Compl. ¶¶ 39-40.

---

[1] An IEP is an individualized education program.

The plaintiff further alleges that "[t]he August 29, 2019 IEP was not reasonably calculated to provide meaningful benefit . . . because the services were too meager to address AC's dyslexia and academic deficient achievements." Compl. ¶ 41. The team recommended placement at Pinchbeck Elementary School. *Id.* at ¶ 42. AC's parents decided to fund tutoring from an Orton Gillingham instructor who provided progress reports to the defendant. Compl. ¶¶ 42-43. Despite their concerns, AC's parents consented to implementation of the IEP teams offer of 150 minutes of reading services per week as well as the teams' goals." Compl. ¶ 44.

In September 2019, the defendant provided AC with an Independent Educational Evaluation and reevaluated her "with selected components of psychological, vision and speech language specifically looking at her auditoring processing, as well as providing her Assistive Technology." Compl. ¶¶ 48-50. On September 23, the defendant denied a request from AC's parents for a peer-reviewed reading instruction program. Compl. ¶ 52. On October 1, 2019, AC received a diagnoses of dyslexia and ADHD. Compl. ¶ 54. On October 15, 2019, an audiologist determined she had Auditory Processing Disorder. Compl. ¶ 55.

On or about October 18, 2019, one of AC's parents observed her teacher using "guided reading" with her, a technique that is not recommended. Compl. ¶¶ 56-57. The plaintiff alleges that the literacy program used by the defendant is not "specifically designed" for students with learning disabilities. Compl. ¶ 58.

An eligibility meeting on November 26, 2019 found various deficiencies in AC's academic performance and abilities and determined that she had a specific learning disability (dyslexia). Compl. ¶ 61. On December 19, 2019, the IEP team held a meeting, but failed to explain its abandonment of the prior IEP, failed to provide an accurate overview of AC's auditory processing disorder, and refused all but one of the goals suggested by AC's parents.

Compl. ¶ 63.  The plaintiff claims that the resulting IEP was essentially the same as the prior one because it did not take into account AC's dyslexia.  *Id.*  The parents consented to the implementation of this IEP on February 18, 2020.  Compl. ¶ 66.

The COVID pandemic forced the defendant to stop delivering IEP services between March 16, 2020 and the close of the school year.  Compl. ¶ 67.  Consequently, AC's parents paid for private tutoring for her.  Compl. ¶ 68.  AC's parents requested additional services because her Final Progress Report indicated that she was reading below grade level, but the defendant refused to provide such services because it claimed AC was making progress.  Compl. ¶¶ 69-71. Because of additional poor test results, AC's parents funded her participation in a summer camp specializing in language disabilities.  Compl. ¶¶ 72-74.

Heading into the 2020-2021 school year, AC's parents learning that AC's new special education teacher did not specialize in Orton-Gillingham training, the gold standard for teaching dyslexic students.  Compl. ¶ 75.  This teacher denied being a reading specialist.  Compl. ¶ 76. The defendant's Dyslexia Advisor assessed AC in September 2020, but "wrongly scored" the assessment.  Compl. ¶ 77.

In October 2020, AC displayed evidence of self-injurious behavior, received a diagnosis of anxiety and began counseling with a psychologist.  Compl. ¶¶ 81-82.

On October 6, 2020, the IEP team met and recommended two new goals for AC based on recent poor test results.  Compl. ¶¶ 83-84.  From September 8, 2020 until November 1, 2020, AC did not receive reading services as required by her February 18, 2020 IEP.  Compl. ¶ 86.  The defendant could not tell AC's parents when such services would begin.  Compl. ¶ 88.  As late as November 6, 2020, AC's teacher indicated she did not know she was to provide such services. Compl. ¶ 89.

In November and December 2020, AC continued to test poorly and her parents communicated their concerns about AC's performance and AC's reaction to her situation. Compl. ¶¶ 90-92. On one occasion, the defendant changed a poor test result. Compl. ¶ 95

On December 17, 2020, AC's parents and advocated met with HCPS personnel to develop an IEP Plan. Compl. ¶ 96. AC's parents and school personnel disagreed about AC's ability to master word problems. Compl. ¶¶ 97-98. The IEP team had insufficient expertise in "dyslexia and structured literacy or testing" and had to ask AC's advocates for assistance. Compl. ¶ 100. The resulting IEP was both "inadequate [and] incompetent" because it did not provide for the use of a peer-reviewed reading program. Compl. ¶ 101. The plaintiff claims that the defendant's personnel inflated AC's grades and engaged in "intentional misrepresentations" of AC's performance. Compl. ¶¶ 102-04.

During this time period, AC's parents had problems procuring records related to their daughter's education. Compl. ¶¶ 78-79, 109-110, 116, 118.

In January 2021, AC's parents learned about new test data that had not been previously shared with them, that there may have been some grade inflation during the first quarter of the year, and that AC's teacher and special education teacher was on provisional status. Compl. ¶¶ 105-07. They and others participated in a second IEP meeting that did not include changes agreed to in December. Compl. ¶ 108. AC's parents later expressed their concern that AC had not met any of the goals in her IEP for the previous school year and that her grades were inflated. Compl. ¶ 111. They participated in a third IEP meeting where they requested "that AC be placed in a private day school for students with language disabilities" which the defendant recommended a public school and suggested mediation to resolve the issue. Compl. ¶ 112.

In response to a request that AC be provided a class recording so that she could learn to play the recorder, her parents received a "blog link," but AC was not allowed access to classes in art, music, or physical education from November 2020 to June 2021 because of AC's specialized reading instruction, "contrary to the consented to IEP," which stated she would have access to such instruction.  Compl. ¶¶ 113-15.

On February 26, 2021, AC's parents and the IEP team met for apparently the last time.  Compl. ¶ 117.  After five hours and three separate meetings, AC's parents refused to consent to the proposed IEP, which, the parents allege, provided incorrect information, did not provide AC with educational benefit, and did not provide "peer-reviewed instruction or appropriate placement."  *Id.*

At some point after March 16, 2021, "AC's parents decided to withdraw AC from [HCPS schools] and enroll[] her in The New Community School because of the many failures and refusals of the defendant to provide their daughter with FAPE[2] and the meaningful education based upon competent and adequate IEPs."  Compl. ¶ 119.  AC's parents have paid for tuition at The New Community School where AC "began thriving" and stopped the "negative behaviors that she previously exhibited.  Compl. ¶¶ 120-21.  Her parents and teachers believe she is doing well at the new school.  Compl. ¶ 121.

AC's parents "filed for a due process hearing on March 26, 2021 for denial of FAPE for 2018-2019, 2019-2020, and 2020-2021 school years and also requested reimbursement for special education services . . . and compensatory services for COVID compensatory services and private placement."  Compl. ¶ 122.  The hearing lasted "several" days in summer 2021.  Compl. ¶ 123.  The Complaint states, "The Hearing Officer issued a decision on September 23, 2021 in

---

[2] FAPE stands for free appropriate public education.

which both sides presented exhaustive and credible evidence, but the most credible in his determination was from the student's mother and her primary witness, Ms. Debra Tisler." *Id.* The Hearing Officer found that the defendant violated the IDEA and "failed to provide AC with FAPE," but denied the requests for reimbursement for expenses of any kind.  Compl. ¶¶ 124-25.

AC is still attending The New Community School.  Compl. ¶ 127.

## Standard of Review

The School Board filed its initial response to this lawsuit in state court, but has removed this matter to federal court.  Accordingly, this brief addresses its request for relief under Federal Rule of Civil Procedure 12(b)(6).  That rule allows a defendant to move for dismissal of a plaintiff's claim for relief based on the plaintiff's failure to state a claim upon which relief can be granted.  The plaintiff's claims cannot survive such a motion unless she pleads sufficient factual content to state a plausible claim, i.e., one that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (finding motion to dismiss properly granted where plaintiff's factual allegations do not state "plausible" claim for relief). The complaint must allege facts sufficient "'to raise a right to relief above the speculative level,' thereby 'nudg[ing] the[ ] claims across the line from conceivable to plausible.'" *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (first alteration in original) (quoting *Twombly*, 550 U.S. at 555, 570).  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ashcroft*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

Courts assessing such a motion to dismiss follow a two pronged approach: 1) identifying factual allegations and distinguishing them from legal conclusions and 2) determining whether the factual allegations state a plausible claim. *Id.* at 678-79. In addressing whether a plaintiff has pled sufficient facts to state a claim, the court must view the facts in the light most favorable to the plaintiff, but "need not accept the legal conclusions drawn from the facts, and . . . need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (citations and internal quotations omitted). "A pleading that offers [only] 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Ashcroft*, 556 U.S. at 678 (citation omitted). In determining whether a complaint states a plausible claim, a court may rely on its judicial experience and common sense. *Id.* at 679 (citation omitted).

### Argument and Authorities

### 1.   The plaintiff has failed to state a claim under the IDEA.

The plaintiff labels Count I of the Complaint, "The Hearing Officer's Decision Not to Provide Private Placement Was Not Regularly Made." She alleges that "the decision of the Hearing Officer not to require that [she] be privately placed based upon the multiple failures of the defendant to provide her FAPE was not regularly made." Compl. ¶ 130. The plaintiff asks the Court to order the defendant "to privately place" AC in The New Community School and that the defendant be ordered to reimburse her for AC's past and future expenses for attending that school. Compl. ¶¶ 131-32.

While unclear, it appears the plaintiff is trying to pursue a claim under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.* Such actions are original civil actions adjudicated based on the record of an administrative proceeding. *Cnty. Sch. Bd. of*

*Henrico v. Z.P.*, 399 F.3d 298, 309 n.7 (4th Cir. 2005).  Accordingly, judicial review "may be conducted on the administrative record even if there are disputed issues of material fact." *Indep. Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 561 (8th Cir. 1996).  The plaintiff, as the party challenging the administrative decision, bears the burden of establishing that it was erroneous.  *Barnett v. Fairfax Cnty. Sch. Bd.*, 927 F.2d 146, 152 (4th Cir. 1991).  To prevail, the plaintiff must show that the New Community School, which they unilaterally selected as AC's school, was appropriate for her.  *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993).

### A.  The alleged facts definitively refute the contention that any finding of the Hearing Officer was not "regularly made."

A district court reviewing a Hearing Officer's decision under the IDEA "conducts modified de novo review, giving due weight to the underlying administrative proceedings." *O.S. v. Fairfax Cnty. Sch. Bd.*, 804 F.3d 354, 360 (4th Cir. 2015) (internal quotations omitted). "[A]dministrative findings in an IDEA case 'are entitled to *prima facie* correctness,' and 'the district court, if it is not going to follow them is required to explain why it does not.'" *A.B. v. Lawson*, 354 F.3d 315, 325 (4th Cir. 2004) (quoting *Doyle v. Arlington Cnty. Sch. Bd.*, 953 F.2d 100, 105 (4th Cir.1991)). "[F]actual findings made during the state administrative proceeding are entitled to a presumption of correctness, so long as the findings were 'regularly made.'" *Z.P.*, 399 F.3d at 305 (quoting *Doyle*, 953 F.2d at 105). "Factual findings are not 'regularly made' if they are reached through a *process* that is 'far from the accepted norm of a fact-finding process.'" *Id.* (quoting *Doyle*, 953 F.2d at 104) (emphasis added); *see also J.P. v. Cntv. Sch. Bd. of Hanover*, 516 F.3d 254, 259 (4th Cir. 2008).  In reviewing administrative findings, courts must have due regard for the hearing officer's opportunity personally to hear the testimony and assess the weight and credibility of the witnesses.  *See Doyle*, 953 F.2d at 104-05; *A.B.*, 354 F.3d at 327-28; *Z.P.*, 399 F.3d at 306-07 ("We have held that credibility

determinations implicit in a hearing officer's decision are as entitled to deference under *Doyle* as explicit findings.").

In the Complaint, the plaintiff provides no factual support for the legal conclusion that the Hearing Officer's denial of private placement for her was not regularly made.  As indicated above, a hearing officer's process determines whether his or her findings are regularly made.  Administrative findings are regularly made if the officer conducted a proper hearing where all parties were allowed to present evidence and make arguments.  *J.P.*, 516 F.3d at 260.  Here, the plaintiff alleges almost nothing about the conduct of the hearing.  She asserts only that the hearing "was conducted over several da[ys]" and that "both sides presented exhaustive and credible evidence."  Compl. ¶ 123.  Her allegations do not establish that the Hearing Officer deprived her or her parents of any opportunity to present evidence or make arguments.  Other than simply asserting that the officer made the wrong decision about private placement, she does not fault his decision-making process in any way.  Further, the plaintiff admits that the Hearing Officer's determination was based on assessment of the credibility of witnesses, having found the plaintiff's  primary witness was "the most credible." *Id.*  Therefore, not only has the plaintiff failed to claim that the Hearing Officer's decision was not regularly made, but the alleged facts also show that the Hearing Officer made his determination based on having had the opportunity personally to hear the testimony and assess the weight and credibility of the witnesses, as required by law.  As such, the plaintiff cannot succeed on her claim that this finding was not regularly made.

### B.  The Complaint fails to allege facts that show The New Community School was an appropriate placement for AC.

On a more substantive level, the Complaint fails to allege facts about the New Community School to justify the relief sought under the IDEA.  Parents who unilaterally change

10

their child's educational placement "without the consent of state or local officials, do so at their

own financial risk." *Florence*, 510 U.S. at 15 (citation omitted).  Such parents "are entitled to

reimbursement *only* if a federal court concludes both that the public placement violated IDEA

and that the private school placement was proper under the Act."  *Id.*  When deciding

discretionary equitable relief under the IDEA, a court should consider all relevant factors: "Total

reimbursement will not be appropriate if the court determines that the cost of the private

education was unreasonable."  *Id.* at 15-16.  Furthermore, the IDEA provides for the denial or

reduction of private school costs if the parents of a child did not reject the placement proposed

by the school at the most recent IEP meeting or give written notice of removing the child from

public school at least ten days prior to doing so.  20 U.S.C. § 1412(a)(10)(C)(iii).

        In the present case, the plaintiff alleges insufficient facts to demonstrate that placement of

AC in The New Community School "was proper under the Act."  Indeed, she alleges almost no

facts about this school, the reasonableness of its cost, or what notice AC's parents might have

provided to the defendant before placing her there.  While the plaintiff alleges that AC "began

thriving" at the school and "many of her negative behaviors . . . have dissipated or even

disappeared," Compl. ¶ 121, the Complaint does not include facts about the school, its

curriculum, or environment or about what caused this alleged improvement.  Furthermore, the

most reasonable inference from the facts alleged is that AC's parents provided no notice

whatsoever to the defendant prior to placing their child in this private school.  Paragraph 117 of

the Complaint, which details the last IEP meeting concerning AC, does not mention The New

Community School or any private placement for AC.  Paragraph 119, which describes the

decision to withdraw AC from public school, does not provide any facts about notice given to the

defendant (or even a date when the withdrawal took place).  Lastly, the Complaint lacks any

allegations that demonstrate that the plaintiff or her parents provided any evidence to the Hearing Officer about these subjects nor does the plaintiff even allege that evidence specifically regarding the New Community School was presented to the Hearing Officer.  Consequently, this Court, like the Hearing Officer, has no basis on which to grant the plaintiff the equitable relief she seeks in Paragraphs 131 and 132 of the Complaint.

    **2.  The plaintiff has failed to state a claim under the Rehabilitation Act.**

The plaintiff also brings suit under Section 504 of the Rehabilitation Act.  Section 504 states: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  To establish a violation of Section 504 in the context of special education, a plaintiff must allege sufficient facts to show that they were denied a benefit "due to discrimination solely on the basis of the disability."  *Sellers v. Sch. Bd.*, 141 F.3d 524, 528 (4th Cir. 1998) (citation omitted).  The plaintiff claims she is entitled to relief under Section 504 based on the School Board "initially failing, and then refusing to make reasonable accommodations for her disability, including but not limited to denying her private placement at the New Community School."  Compl. at ¶ 134.  In *Sellers,* the Fourth Circuit held that the IDEA and Rehabilitation Act are different statutes and that, to state a claim under the latter law, a plaintiff must do more than merely reallege a violation of the former.  141 F.3d at 528.

Here, the plaintiff has failed to allege facts sufficient to state a plausible claim under either statute.  Indeed, the plaintiff's failure to state a proper IDEA claim, as discussed above, dooms her Section 504 claim asserted on essentially the same facts.  *Doe v. Arlington Cnty. Sch. Bd.*, 41 F. Supp. 2d 599, 608 (E.D. Va. 1999) ("[W]here the IDEA claims are subject to

dismissal the § 504 claims based upon the same allegations, must also be dismissed.").  There

are, however, additional, more substantive grounds to dismiss the Section 504 claim.

### A.  The Complaint fails to allege facts sufficient to show the School Board denied the student a free appropriate public education under Section 504.

The definition of FAPE under Section 504 differs from that under the IDEA in its

comparative nature.  While the IDEA focuses on a student's progress in relation to the student's

own potential, Section 504 requires courts to consider whether students with disabilities are

receiving educational services as effective as those made available to their nondisabled peers.

*K.D. v. Starr*, 55 F. Supp. 3d 782, 784 (D. Md. 2014) ("[T]he free appropriate public education

requirement [under Section 504] differs from the IDEA in that the measure of whether the

education conferred under Section 504 is sufficient is that it must meet the student's needs "as

adequately" as the needs of a non-disabled student.") (citing 34 C.F.R. § 104.33(b), (c)).  Here,

the plaintiff has not alleged facts sufficient to support a claim that the defendant did not provide

educational services to her "as adequately" as it did to her nondisabled peers.  Indeed, the

plaintiff has not alleged any facts about such peers.  Although the Complaint articulates a list of

alleged denials, the plaintiff does not allege that similar requests by non-disabled peers were

approved.[3]  As such, the plaintiff has not established any discrimination on the part of the School

Board.

Similarly, the plaintiff's factual allegations do nothing to establish that any such alleged

discrimination occurred "solely" because of her disabilities.  In large part, for instance, the

Complaint leaves open the question of whether the School Board's supposed deficiencies might

---

[3] Indeed, the plaintiff's primary allegation of discrimination concerns the defendant's failure to provide private placement at The New Community School, Compl. ¶ 134, a placement that would not be warranted for a nondisabled student.

have occurred because of the COVID-19 pandemic.  The plaintiff acknowledges that the defendant had to close schools in March 2020 in accordance with state mandate, but she goes on to allege that the IEP services rendered during that time frame were "insufficient."  Compl. at ¶¶ 67-68.  Under the circumstances, such insufficiency was not "solely" due to the plaintiff's disability.  Similarly, while the plaintiff complains that the defendant failed to provide certain services during the following school year, *see, e.g.*, Compl. at ¶ 86, the persistence of the pandemic suggests it is implausible to assert that the plaintiff's alleged disability was the sole cause of any such failure.  For these reasons, the plaintiff has not articulated facts sufficient to maintain a plausible Section 504 claim.

**B.  The School Board did not engage in bad faith or gross misjudgment.**

Furthermore, asserting a claim under 504 with regard to special education requires more than simply alleging the denial of FAPE; it requires alleging facts sufficient to show "bad faith or gross misjudgment."  *Sellers*, 141 F.3d at 529.  Stated differently, a plaintiff must allege more than simple negligence.  *Id.*  Similarly, it is insufficient "to label conduct in a conclusory manner as having been performed in bad faith or with gross misjudgment."  *K.D.*, 55 F. Supp. 3d at 790 (citations omitted).

"The 'bad faith or gross misjudgment' standard is extremely difficult to meet, especially given the great deference to which local school officials' educational judgments are entitled."  *Doe*, 41 F. Supp. 2d at 609.  The standard does not require a showing of "animosity, ill will, or malice," but does require more than an incorrect evaluation or substantively faulty IEP.  *K.D.*, 55 F. Supp. 3d at 790.  Courts have refused to find bad faith or gross misjudgment even where a school board failed to recognize the ineffectiveness of its plan "for several years before taking corrective action."  *Id.*

Here, the plaintiff's own alleged facts demonstrate that the defendant could be guilty of, at most, educational malpractice.  She couches the large majority of her charges in just such terms.  *See, e.g.*, Compl. ¶¶ 94, 98 (alleging "incorrect" data and conclusions).  An IEP that is "not reasonably calculated to provide meaningful benefit . . . because the services were too meager" indicates negligence, not bad faith.  Compl. ¶ 41.  Using a teaching technique that is "not recommended" is not gross misjudgment.  Compl. ¶ 56.

The plaintiff's other, more colorful allegations similarly fail to meet the requisite standard.  Her allegations that agents of the defendant "exhibited resentment" and displayed "adversarial conduct," Compl. ¶¶ 39-40, are too vague to satisfy the Section 504 standard.  Her repeated use of the verb "refuse" when the supporting facts simply indicate that the defendant failed to do something similarly fail.  The plaintiff alleges grade inflation and the like, but fails to allege facts showing that such adjustments were not warranted or customary under the circumstances.  To the extent that the plaintiff seeks to create an inference of bad faith or gross misjudgment out of the defendant's preparation of an IEP without the input of AC's parents (because of the parents' travel), Compl. ¶¶ 17-18, the plaintiff's effort fails because the IDEA implementing regulations require that each local educational agency ensure that an IEP is developed within 30 calendar days of the date the eligibility group determines that the child needs special education and related services.  34 C.F.R. § 300.323(c).  Here, the defendant simply did what it needed to do to meet that deadline.  Those efforts are not bad faith.  As such, the plaintiff has failed to state a Section 504 claim.

### 3.  The plaintiff may not recover punitive damages.

Even if the Court allows the plaintiff's claims to proceed, she may not recover punitive damages.  The plaintiff seeks "$350,000 in punitive damages for the pain, suffering,

embarrassment and other emotional damages that AC has experienced prior to being enrolled in the New Community School." Compl. at 23. The authority cited as the basis of her claims, however, does not allow for the recovery of such damages. Neither compensatory nor punitive damages are available under the IDEA. *Sellers*, 141 F.3d at 526-28 (stating, inter alia, "The [Supreme] Court has never approved an award of compensatory or punitive damages under IDEA."). A plaintiff suing under Section 504 of the Rehabilitation Act may also not recover punitive damages. *Barnes v. Gorman*, 536 U.S. 181, 189-90 (2002). Therefore, the Court should not allow the plaintiff to recover such damages in this suit.

## Conclusion

The plaintiff's Complaint fails to set forth a plausible factual scenario justifying any recovery under either of the two federal statutes that she cites as the basis for this legal action. Most clearly, the plaintiff cannot prevail under the IDEA because she has failed to allege facts to show that the Hearing Officer made any mistake at the administrative level by refusing to provide compensation to her for her parents' decision to place her in a private school. This failure precludes any recovery under Section 504 as well.

WHEREFORE, the defendant School Board asks the Court to grant its Motion to Dismiss and dismiss the plaintiff's lawsuit with prejudice.

Respectfully submitted,

**HENRICO COUNTY SCHOOL BOARD**


By: _____/s/_____
John D. McChesney (VSB No. 44326)
Senior Assistant County Attorney
County of Henrico
P.O. Box 90775
Henrico, VA  23273-0775
Phone: (804) 501-4677
Fax: (804) 501-4140
Email: mcc121@henrico.us
*Counsel for Defendant Henrico County School Board*


**<u>Certificate of Service</u>**

I certify that on this 28th day of April 2022, I caused a true copy of this document to be

sent by first-class mail, postage prepaid, to:

> Jason Krumbein
> 1650 Willow Lawn Drive
> Suite 302
> Richmond, VA 23230
> *Counsel for Plaintiff*


_____/s/_____
John D. McChesney (VSB No. 44326)
Senior Assistant County Attorney
Office of the County Attorney
County of Henrico
P. O. Box 90775
Henrico, Virginia 23273-0775