IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| A.C., a minor, by and through R.C., as parent and next friend, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 3:22CV336–HEH ) |
| HENRICO COUNTY SCHOOL BOARD, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION**
**(Granting Motion to Dismiss in Part and Granting Leave to Amend)**

This matter is before the Court on Defendant Henrico County School Board's ("Defendant" or the "School Board") Motion to Dismiss (the "Motion") (ECF No. 3) filed on May 5, 2022. The School Board asks the Court to dismiss the Complaint (ECF No. 1-2) filed by Plaintiff A.C., a minor, by and through R.C., as parent and next friend ("Plaintiff" or "A.C.").[1] The parties have submitted memoranda in support of their respective positions. On June 23, 2022, the Court heard oral argument on the issues, and the Motion is now ripe for review. For the reasons stated herein, the Court will deny the Motion as to Count I and grant the Motion as to Count II with leave for Plaintiff to file an amended complaint.

---

[1] Plaintiff originally filed her Complaint in the Circuit Court of Henrico County, Virginia on March 22, 2022, but Defendant removed the case to this Court on April 28, 2022. (Notice of Removal, ECF No. 1.)

## I. STANDARD OF REVIEW

Defendant's Motion is premised on Federal Rule of Civil Procedure 12(b)(6). (Mot. at 1, ECF No. 3.) A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (alteration in original) (quoting *Tobey*, 706 F.3d at 387). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 679). A court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

While a motion to dismiss tests the sufficiency of a complaint, courts may consider documents that are either "explicitly incorporated into the complaint by reference" or "those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted). A court may consider a document not attached to the complaint, when "the document [is] integral to the

complaint and there is no dispute about the document's authenticity." *Id.* at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached, . . . the exhibit prevails." *Id.* (alteration in original) (quoting *Fayetteville Invs. v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). In considering a motion to dismiss, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

## II. BACKGROUND

Viewed through the lens of Rule 12(b)(6) review, the relevant facts are as follows. On January 29, 2019, when A.C. was about 7 or 8 years old, she began attending one of Defendant's schools, Pinchbeck Elementary School. (Compl. ¶ 5, ECF No. 1-2.) Around that time, A.C. was often hyperactive, impulsive, and had trouble focusing her attention on tasks. (*Id.* ¶ 7.) These behaviors are common among children with attention deficit hyperactivity disorder ("ADHD"). (*Id.*) At the same time, A.C. did not perform well academically and received failing grades in most classes. (*Id.* ¶¶ 8, 12, 16.) On May 9, 2019, after some alleged delays, the School Board determined that A.C. needed an individualized education program ("IEP") to ensure she made academic progress despite her mental disabilities. (*Id.* ¶ 13.) On June 25, 2019, the School Board developed A.C.'s IEP without her parents present. (*Id.* ¶¶ 17–19.)

After the summer break, in August 2019, the School Board and A.C.'s parents met

to review the IEP. (*Id.* ¶ 26.) At the meeting, A.C.'s parents alerted the School Board that A.C. was diagnosed with dyslexia over the summer, but the School Board refused to consider that diagnosis. (*Id.* ¶¶ 22–25, 37.) The School Board refused many of the parents' other requests. (*Id.* ¶¶ 28–41.) Instead, the School Board's IEP recommended that A.C. receive 150 minutes of special reading instruction per week. (*Id.* ¶ 42.) Despite their reservations, A.C.'s parents consented to the IEP proposed by the School Board. (*Id.* ¶ 44.) Her parents, however, funded outside tutoring for A.C. starting in September 2019. (*Id.* ¶ 43.)

In September 2019, the School Board agreed to have an independent expert evaluate A.C. to determine what disabilities she had. (*Id.* ¶¶ 48–49.) The independent expert concluded that A.C. had ADHD, dyslexia, and auditory processing disorder ("APD"). (*Id.* ¶¶ 54–55.) Over the fall of 2019, A.C. continued to perform below her peers, her parents continued to request changes to her education, and the School Board continued to refuse any changes. (*Id.* ¶¶ 56–61.)

On December 19, 2019, the parties met to discuss a new IEP. (*Id.* ¶ 63.) At this meeting, A.C.'s parents requested that the IEP include more goals in order to address her disabilities, but the School Board refused to change or add to the IEP in any way. (*Id.*) The School Board continued to only offer 150 minutes of special reading instruction per week. (*Id.*) Again, despite their continuing reservations, A.C.'s parents consented to the IEP on February 18, 2020. (*Id.* ¶ 66.) After schools closed due to the COVID-19 pandemic in March 2020, A.C. stopped receiving special reading instruction. (*Id.* ¶ 70.)

In July 2020, an expert evaluated A.C.'s reading skills and concluded that her skills remained well below her peers. (*Id.* ¶ 72.)

On December 17, 2020, and January 14, 2021, A.C.'s parents and the School Board met to update the IEP, but the School Board did not approve any changes that the parents requested. (*Id.* ¶¶ 96, 108.) On January 22, 2021, the parties met again, and the parents requested that A.C. be placed in a private school to address her disabilities. (*Id.* ¶ 112.) However, Defendant refused. (*Id.*) After a combined 15 hours of negotiation, in February 2021, A.C.'s parents refused to consent to the new IEP proposed by the School Board. (*Id.* ¶ 117.) Instead, the parents enrolled A.C. in a private school called the New Community School. (*Id.* ¶ 119.) Plaintiff still attends the New Community School and is thriving there. (*Id.* ¶ 121.)

On March 26, 2021, A.C.'s parents asked for a due process hearing because of the School Board's failure to provide a free appropriate public education to A.C. from January 2019 onward. (*Id.* ¶ 122.) After eight days of testimony and presentations in June 2021, the Hearing Officer released a short, three-page Decision. (Decision, ECF No. 17-1.)[2] In the Decision, the Hearing Officer concluded that the School Board had "not complied with the requirements of [the Individuals with Disabilities Education Act ("IDEA")] in regard to providing a [f]ree and [a]ppropriate [e]ducation ("FAPE") to [A.C.]" (*Id.* at 2.) The Hearing Officer described A.C.'s witnesses, including her

---

[2] The Court may consider the text of the Hearing Officer's Decision because, while it was not attached to the Complaint as an exhibit, it is integral to the Complaint and neither side disputes its authenticity. *See Goines*, 822 F.3d at 166.

5

mother, as more credible than the School Board's. (*Id.*) However, the Hearing Officer went on to dismiss "each and all other requests by the student." (*Id.* at 3.) He elaborated that A.C.'s requests for reimbursement or monetary damages were not appropriate and not available under the law. (*Id.*) Moreover, he decided that there was no evidence that private school placement was appropriate for A.C. (*Id.*) Thus, although the Hearing Officer agreed with A.C. and her parents that the School Board violated the IDEA and denied her a free appropriate public education, the Hearing Officer did not believe *any relief* that he could provide to A.C. was appropriate. (*See id.* at 2–3.)

Based on these facts, Plaintiff now brings two claims against Defendant including one claim under the IDEA, 20 U.S.C. § 1400, *et seq.* (Count I), and another claim under the Rehabilitation Act, 29 U.S.C. § 794(a) (Count II). (Compl. at 21–23.) As a remedy, Plaintiff requests reimbursement for her tuition at the New Community School, future private education costs as the Court deems appropriate, other "compensatory education service[s]" provided by Defendant, and compensatory damages.[3] (*Id.* at 22–23.) Defendant moves to dismiss both claims. (Mot. at 1.)

### III. ANALYSIS

The Court first considers Plaintiff's IDEA claim brought in Count I. A brief overview of the IDEA helps place Plaintiff's claim in context. When a local school

---

[3] Plaintiff originally asked for punitive damages but now concedes that such damages are not available. (Pl.'s Mem. Opp'n at 4, ECF No. 13.) Moreover, Plaintiff asked for traditional compensatory damages, but those also cannot be awarded in an action under the IDEA. *Emery v. Roanoke City Sch. Bd.*, 432 F.3d 290, 298 (4th Cir. 2005). Compensatory damages and punitive damages seem to be available in some cases under the Rehabilitation Act. *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 830 (4th Cir. 1994).

6

system receives certain federal funds offered, the IDEA in turn gives children in that school system a right to a "free appropriate public education," sometimes referred to as FAPE. 20 U.S.C. § 1412(a)(1); *Endrew F. v. Douglas Cnty. Sch. Dist.*, 137 S. Ct. 988, 993 (2017). FAPE includes special education and related services for disabled children at no extra cost to the child's family. 20 U.S.C. § 1401(9). Moreover, FAPE must be provided to the child "in conformity with the individualized education program [or IEP] required" under the statute. *Id.*

An IEP is "the centerpiece of the [IDEA's] education delivery system for disabled children." *Honig v. Doe*, 484 U.S. 305, 311 (1988). A team including teachers, school officials, and the child's parents must meet to develop an IEP according to certain procedures. 20 U.S.C. § 1414(d)(1)(B). An IEP must include a description of the child's present academic performance, how her disabilities affect that performance, what measurable annual goals should be included for her academic achievement, and how the school will provide special education to the child so that she achieves the academic goals. *Id.* § 1414(d)(1)(A).

If parents and educators disagree about the contents of a child's IEP, they must first go through either an informal meeting or a formal mediation. *Id.* §§ 1415(e), (f)(B)(i). If that fails, the parties may proceed to a "due process hearing" before a state education agency. *Id.* §§ 1415(f)(1)(A), (g). After a final decision from that hearing, either party may file a civil action in state or federal court challenging parts of the hearing officer's decision. *Id.* § 1415(i)(2)(A). In such an action, a court must receive the

7

administrative record, hear any additional evidence requested by the parties and grant "such relief as the court determines is appropriate" based on a preponderance of the evidence. *Id.* § 1415(i)(2)(C).[4]

A school system may violate the IDEA's procedure or its substance. Generally, in response to a procedural violation, a court may do nothing more than order compliance with those procedures. *R.F. v. Cecil Cnty. Pub. Sch.*, 919 F.3d 237, 248 (4th Cir. 2019).[5] A school system violates the substance of the IDEA whenever it does not provide a student with a free appropriate public education. 20 U.S.C. § 1412(a)(1); *Endrew F.*, 137 S. Ct. at 993. More specifically, a school system substantively violates the IDEA when it does not "offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 137 S. Ct. at 999. The IEP must be *reasonable* but need not be ideal. *Id.*

Determining whether an IEP is reasonable is a "fact-intensive exercise." *Id.* While the parties can introduce additional evidence to the court, 20 U.S.C. § 1415(i)(2)(C), the administrative record from the due process hearing will likely constitute the bulk of the facts before the Court. In evaluating the administrative record,

---

[4] Some refer to these civil actions as "appeals" from the due process hearing below, but that is not technically correct. Unlike an appellate court, a state or federal court has no power to remand the case back to the hearing officer. *Johnson v. Charlotte-Mecklenburg Schs. Bd. of Educ*, 20 F.4th 835, 845–46 (4th Cir. 2021). Instead, with deference to the hearing officer in certain respects, the court must resolve all issues in the case by itself. *Id.*

[5] However, a procedural violation can amount to a substantive violation where: (1) plaintiff has alleged a procedural violation, (2) the violation has significantly impeded the ability of the parents to participate in the decisions about providing their child with a FAPE, and (3) the student, because of the procedural violation, did *not* receive a FAPE. *Id.*

"findings of fact by the hearing officers . . . [must] be considered *prima facie* correct." *Cnty. Sch. Bd. of Henrico Cnty., Va. v. Z.P.*, 399 F.3d 298, 304 (4th Cir. 2005) (quoting *Doyle v. Arlington Cnty. Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991)).[6]

In this case, Plaintiff and Defendant worked through the entire administrative review process which concluded with the Decision by the Hearing Officer on October 25, 2021. (Decision at 3.) In that Decision, the Hearing Officer makes two important conclusions. First, he determined that Defendant *did not* provide Plaintiff with a free appropriate public education under the IEP it developed. (*Id.* at 2.) Thus, the Hearing Officer found that the school violated the substance of the IDEA. (*See id.*) Next, he determined that *no relief* should be granted to Plaintiff including reimbursement for her past and future private education even though a substantive violation had occurred. (*Id.* at 3.) In her Complaint, Plaintiff contends that the Hearing Officer's second conclusion, that no relief should be granted, was wrong. (Compl. ¶¶ 129–32.) Plaintiff asks this Court to determine and review whether private placement or some other relief should be granted.[7] (*Id.* at 22–23.)

Defendant argues that Plaintiff fails to state a claim under the IDEA because she

---

[6] In order to disregard any factual findings of the hearing officer, a court must determine that the findings were not "regularly made." *Z.P.*, 399 F.3d at 305. This is usually the case where the hearing officer's procedure was "far from the accepted norm of a fact-finding process." *Id.* (quoting *Doyle*, 953 F.2d at 104).

[7] Plaintiff does not challenge the first holding of the Hearing Officer, that the School Board denied her a free appropriate public education. Thus, as the School Board suggested at the hearing, if the School Board wishes to separately challenge that holding, it must file a counterclaim. *See, e.g.*, Defendant's Answer and Counterclaim, *M.N. v. Sch. Bd. of City of Va. Beach*, No. 2:17cv65 & 66 (May 30, 2017), ECF No. 7.

9

fails to elaborate on how or why the Hearing Officer erred in denying her any sort of relief. (Def.'s Mem. Supp. at 10, ECF No. 4.) The bar at the Rule 12(b)(6) stage, however, is not so high. Plaintiff need only give Defendant fair notice of her claim and the grounds upon which it rests. *Ray*, 948 F.3d at 226; *Tobey*, 706 F.3d at 387. The IDEA states that "any party aggrieved by the findings and decision [of the hearing officer] shall have the right to bring a civil action with respect to the complaint presented pursuant to this section." 20 U.S.C. § 1415(2)(i)(2). Based on that language, a plaintiff need only cite to the decision of the hearing officer below and outline in what way that decision "aggrieved" him or her. *See id.*

Here, Plaintiff specifies the Hearing Officer's holding that she challenges. (Compl. ¶¶ 129–32.) As detailed above, Plaintiff explains the shortcomings of Defendant's IEP (*see id.* ¶¶ 5–128), and, albeit briefly, describes how private placement would be better because Plaintiff is "thriving" there and "many of her negative behaviors . . . have dissipated or even disappeared" (*id.* ¶ 121). The Court agrees that such allegations do not necessarily *prove* that Plaintiff is entitled to relief, but at this stage, Plaintiff need only allege that her claim is facially *plausible*. *Tobey*, 706 F.3d at 386; *Iqbal*, 556 U.S. at 679. Likewise, a complaint need only give Defendant "fair notice" of the claim against it. *Ray*, 948 F.3d at 226. Unlike the traditional federal case, this case springs out of a lengthy administrative process that Plaintiff and Defendant have already completed. Defendant has certainly been given fair notice of Plaintiff's claims after considering the Complaint together with the context of the extensive administrative

10

process below.[8] Thus, while Plaintiff's Complaint does not artfully or perfectly plead a claim under the IDEA in Count I, it overcomes Rule 12(b)(6) review, and the Court will deny the Motion to Dismiss as to Count I.

In Count Two, Plaintiff brings a separate claim under Section 504 of the Rehabilitation Act. (Compl. ¶¶ 133–34.) The relevant portion of the Act requires that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of [her] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving [f]ederal financial assistance." 29 U.S.C. § 794(a). To plead a violation of this statute arising out of the same context as an IDEA claim, a plaintiff's allegation of discrimination must be "something more" than a failure to provide a free appropriate public education. *Sellers v. Sch. Bd. of the City of Manassas, Va.*, 141 F.3d 524, 529 (4th Cir. 1998) (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982)). That is, a plaintiff must adequately allege that the school exercised "bad faith or gross misjudgment" in implementing the plaintiff's IEP such that intentional discrimination could be inferred. *Id.* Allegations of mere negligence or that the school's IEP was substantively deficient

---

[8] Defendant also argues that since part of Plaintiff's challenge in Count I would require putting aside a factual finding of the Hearing Officer, that the New Community School was not a proper placement, Plaintiff should have to plead specifics as to how the Decision was not regularly made. (Def.'s Mem. Supp. at 10.) First, while Plaintiff clearly pleads that the preferable relief is private placement, she also pleads that the Hearing Officer was incorrect in granting *no relief* of any kind. (Compl. ¶¶ 125–32; *see id.* at 23.) Second, the short, informal, three-page Decision of the Hearing Officer is at least some evidence that his decision not to grant private placement was not regularly made. (Decision at 1–3.) *See J.P. ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.*, 515 F.3d 254, 260 (noting that a hearing officer's explanation of her factual findings *could* be so deficient that the decision warranted no deference).

11

are not enough. *Id.*

In this case, Plaintiff does not allege any sort of bad faith or gross misjudgment. Some allegations come close, however. For example, A.C. alleges that a school employee once wrongly scored one of her assessments. (Compl. ¶ 77.) She alleges that on another occasion, the School Board intentionally misrepresented her academic performance to her parents. (Compl. ¶¶ 103–04.) Yet, Plaintiff does not describe how either of these acts create a reasonable inference of bad faith or gross misjudgment. Attaching the word "intentional" to an allegation is not sufficient.

Moreover, Plaintiff goes on to describe how these errors were acknowledged by Defendant and at least partially addressed. (*Id.* ¶¶ 77, 106–07.) In the full context of the entire Complaint, the Court cannot interpret any of Plaintiff's allegations as showing bad faith or gross misjudgment in the creation and implementation of A.C.'s IEP. *See Sellers*, 141 F.3d at 529. Thus, Plaintiff does not adequately allege a claim under the Rehabilitation Act under Count II and the Court will grant the Motion to Dismiss as to Count II.

Nevertheless, Plaintiff asks for leave to amend her Complaint. Federal Rule of Civil Procedure 15 provides that a Court should "freely" give parties leave to amend their pleadings "when justice so requires." Whether justice requires leave to amend is within the discretion of the trial court. *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). The Court, within its discretion, will grant the Plaintiff leave to amend her allegations and file an amended complaint if she so wishes.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Motion to Dismiss (ECF No. 3) as to Count I and grant it as to Count II. Plaintiff may amend her Complaint within the period set by the Order attached to this Memorandum Opinion.

An appropriate Order will accompany this Memorandum Opinion.

                                              /s/  
                                      Henry E. Hudson  
                                      Senior United States District Judge

Date: July 11, 2022  
Richmond, Virginia