IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| A.C., a minor, by and through R.C., as parent and next friend, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 3:22-cv-336–HEH ) |
| HENRICO COUNTY SCHOOL BOARD, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION**
**(Granting Defendant's Motion to Dismiss Count II)**

This matter is before the Court on Defendant Henrico County School Board's ("Defendant" or the "School Board") Motion to Dismiss (the "Motion") filed on August 4, 2022. (Mot., ECF No. 24.) The School Board asks the Court to dismiss the Amended Complaint (ECF No. 23) filed by Plaintiff A.C., a minor, by and through R.C., as parent and next friend ("Plaintiff" or "A.C.").[1] As for Plaintiff's original Complaint (ECF No. 1-2), the Court previously denied Defendant's Motion to Dismiss as to Count I and granted the Motion as to Count II with leave for Plaintiff to file an amended complaint. (Mem. Op. at 1, ECF No. 21; Order, ECF No. 22.) On July 25, 2022, Plaintiff filed an Amended Complaint. (Am. Compl., ECF No. 23.) Defendant's Motion is now ripe for review.

---

[1] Plaintiff originally filed her Complaint in the Circuit Court of Henrico County, Virginia, on March 22, 2022, but Defendant removed the case to this Court on April 28, 2022. (Notice of Removal, ECF No. 1.)

The parties have submitted memoranda in support of their respective positions. The Court heard oral argument on the first Motion to Dismiss and therefore will rule on the pleadings. For the reasons stated herein, the Court will grant the Motion as to Count II.

## I. STANDARD OF REVIEW

Defendant's Motion is premised on Federal Rule of Civil Procedure 12(b)(6). (Mot. at 1.) A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (alteration in original) (quoting *Tobey*, 706 F.3d at 387). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 679). A court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

While a motion to dismiss tests the sufficiency of a complaint, courts may

consider documents that are either "explicitly incorporated into the complaint by reference" or "those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted). A court may consider a document not attached to the complaint, when "the document [is] integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached, . . . the exhibit prevails." *Id.* (alteration in original) (quoting *Fayetteville Invs. v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)). In considering a motion to dismiss, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

## II. BACKGROUND

Viewed through the lens of Rule 12(b)(6) review, the relevant facts are as follows. On January 29, 2019, when A.C. was about 7 or 8 years old, she began attending one of Defendant's schools, Pinchbeck Elementary School. (Am. Compl. ¶ 5.) Around that time, A.C. was often hyperactive, impulsive, and had trouble focusing her attention on tasks. (*Id.* ¶ 7.) These behaviors are common among children with attention deficit hyperactivity disorder ("ADHD"). (*Id.*) At the same time, A.C. did not perform well academically and received failing grades in most classes. (*Id.* ¶¶ 8, 12, 16.) On May 9, 2019, after some alleged delays, the School Board determined that A.C. needed an

3

Individualized Education Program ("IEP") to ensure she made academic progress despite her mental disabilities. (*Id.* ¶ 13.) On June 25, 2019, the School Board developed A.C.'s IEP without her parents present. (*Id.* ¶¶ 17–19.)

After the summer break, in August 2019, the School Board and A.C.'s parents met to review the IEP. (*Id.* ¶ 26.) At the meeting, A.C.'s parents alerted the School Board that A.C. was diagnosed with dyslexia over the summer, but the School Board refused to consider that diagnosis. (*Id.* ¶¶ 22–25, 37.) The School Board refused many of A.C.'s parents' other requests. (*Id.* ¶¶ 28–41.) Instead, the School Board's IEP recommended that A.C. receive 150 minutes of special reading instruction per week. (*Id.* ¶ 42.) Despite their reservations, A.C.'s parents consented to the IEP proposed by the School Board. (*Id.* ¶ 44.) Her parents, however, funded outside tutoring for A.C. starting in September 2019. (*Id.* ¶ 43.)

In September 2019, the School Board agreed to have an independent expert evaluate A.C. to determine what disabilities she had. (*Id.* ¶¶ 48–49.) The independent expert concluded that A.C. had ADHD, dyslexia, and auditory processing disorder ("APD"). (*Id.* ¶¶ 54–55.) Over the fall of 2019, A.C. continued to perform below her peers, her parents continued to request changes to her education, and the School Board continued to refuse any changes. (*Id.* ¶¶ 56–61.)

On December 19, 2019, the parties met to discuss a new IEP. (*Id.* ¶ 63.) At this meeting, A.C.'s parents requested that the IEP include more goals in order to address her disabilities, but the School Board refused to change or add to the IEP in any way. (*Id.*)

The School Board continued to only offer 150 minutes of special reading instruction per week. (*Id.*) Again, despite their continuing reservations, A.C.'s parents consented to the IEP on February 18, 2020. (*Id.* ¶ 66.) After schools closed due to the COVID-19 pandemic in March 2020, A.C. stopped receiving special reading instruction. (*Id.* ¶ 70.) In July 2020, an expert evaluated A.C.'s reading skills and concluded that her skills remained well below those of her peers. (*Id.* ¶ 72.) In September 2020, A.C.'s Dyslexia Advisor, Rebecca Hodell, assessed A.C.'s reading achievement and mistakenly scored the assessment resulting in A.C. being assigned to the fourth-grade instructional level when A.C. should have been at the third-grade level. (*Id.* ¶ 93–94.) In October 2020, A.C. displayed evidence of self-injurious behaviors due to anxiety and an IEP meeting was held to discuss A.C.'s regressions. (*Id.* ¶ 81–82.)

On December 17, 2020, and January 14, 2021, A.C.'s parents and the School Board met to update the IEP, but the School Board did not approve any changes that A.C.'s parents requested. (*Id.* ¶¶ 96, 108.) On January 22, 2021, the parties met again, and A.C.'s parents requested that A.C. be placed in a private school to address her disabilities. (*Id.* ¶ 112.) However, Defendant refused. (*Id.*) After a combined 15 hours of negotiation, in February 2021, A.C.'s parents refused to consent to the new IEP proposed by the School Board. (*Id.* ¶ 117.) Instead, A.C.'s parents enrolled A.C. in a private school called the New Community School. (*Id.* ¶ 119.) Plaintiff still attends the New Community School and is thriving there. (*Id.* ¶ 121.)

On March 26, 2021, A.C.'s parents asked for a due process hearing because of the

School Board's failure to provide a free and appropriate public education to A.C. from January 2019 onward. (*Id.* ¶ 122.) After eight days of testimony and presentations in June 2021, the Hearing Officer released a short, three-page Decision. (Decision, ECF No. 17-1.)[2] In the Decision, the Hearing Officer concluded that the School Board had "not complied with the requirements of [the Individuals with Disabilities Education Act ("IDEA")] in regard to providing a [f]ree and [a]ppropriate [p]ublic [e]ducation ("FAPE") to [A.C.]" (*Id.* at 2.) The Hearing Officer described A.C.'s witnesses, including her mother, as more credible than the School Board's witnesses. (*Id.*) However, the Hearing Officer dismissed "each and all other requests by the student." (*Id.* at 3.) He elaborated that A.C.'s requests for reimbursement or monetary damages were not appropriate and not available under the law. (*Id.*) Moreover, he decided that there was no evidence that private school placement was appropriate for A.C. (*Id.*) Thus, although the Hearing Officer agreed with A.C. and her parents that the School Board violated the IDEA and denied her a free and appropriate public education, the Hearing Officer did not believe *any relief* that he could provide to A.C. was appropriate. (*See id.* at 2–3.)

Based on these facts, Plaintiff brought two claims against Defendant, in her original Complaint, including one claim under the IDEA, 20 U.S.C. § 1400, *et seq.* (Count I), and another claim under the Rehabilitation Act, 29 U.S.C. § 794(a) (Count II).

---

[2] The Court may consider the text of the Hearing Officer's Decision because, while it was not attached to the Complaint as an exhibit, it is integral to the Complaint and neither side disputes its authenticity. *See Goines*, 822 F.3d at 166.

6

(Compl. at 21–23.) As a remedy, Plaintiff requested reimbursement for her tuition at the New Community School, future private education costs as the Court deems appropriate, other "compensatory education service[s]" provided by Defendant, and compensatory damages.[3] (*Id.* at 22–23.) Defendant moved to dismiss both claims. (Def.'s First Mot. to Dismiss at 1.) The Court denied Defendant's First Motion to Dismiss as to Count I and granted the Motion as to Count II, with leave for Plaintiff to file an amended Complaint as to Count II. (Order at 1.) Plaintiff now realleges the claim under the Rehabilitation Act, 29 U.S.C. § 794(a) (Count II). (Am. Compl. at 22.) Plaintiff requests the same remedy as stated in the original Complaint. (*Id.* at 21–23; Am. Compl. at 32–33.) Defendant again moves to dismiss that claim (Count II). (Mot. at 1.)

### III.  ANALYSIS

Plaintiff brings a claim under Section 504 of the Rehabilitation Act. (Am. Compl. ¶¶ 131–87.) The relevant portion of the Act requires that "[n]o otherwise qualified individual with a disability in the United States . . . shall, *solely* by reason of [her] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving [f]ederal financial assistance." 29 U.S.C. § 794(a) (emphasis added). To plead a violation of this statute arising out of the same context as an IDEA claim, a plaintiff's allegation of discrimination must be

---

[3] Plaintiff originally asked for punitive damages but now concedes that such damages are not available. (Pl.'s Mem. Opp'n at 4, ECF No. 13.) Moreover, Plaintiff asked for traditional compensatory damages, but those cannot also be awarded in an action under the IDEA. *Emery v. Roanoke City Sch. Bd.*, 432 F.3d 290, 298 (4th Cir. 2005). Compensatory damages and punitive damages seem to be available in some cases under the Rehabilitation Act. *Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 830 (4th Cir. 1994).

7

"something more" than a failure to provide a free and appropriate public education. *Sellers v. Sch. Bd. of the City of Manassas, Va.*, 141 F.3d 524, 529 (4th Cir. 1998) (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982)). A plaintiff must adequately allege that the school exercised "bad faith or gross misjudgment" in executing the plaintiff's IEP such that intentional discrimination could be inferred. *Id.* Allegations of negligence or that the IEP was substantively deficient are not enough. *Id.*

In this case, the Court previously dismissed Plaintiff's original Section 504 claim and noted that while "[s]ome allegations come close," Plaintiff did "not allege any sort of bad faith or gross misjudgment." (Mem. Op. at 12.) In A.C.'s original Complaint, she alleged that a school employee once wrongly scored one of her assessments (Compl. ¶ 77), the School Board intentionally misrepresented her academic performance to her parents (Compl. ¶¶ 103–04), and these errors were acknowledged by Defendant and at least partially addressed (*Id.* ¶¶ 77, 106–07). Yet, the Court dismissed the claim because "Plaintiff did not describe how either of these acts create a reasonable inference of bad faith or gross misjudgment" and "[a]ttaching the word 'intentional' to an allegation is not sufficient." (Mem. Op. at 12.) Moreover, the Court noted that in the full context of the entire Complaint, it could not interpret any of Plaintiff's allegations as showing bad faith or gross misjudgment in the creation and implementation of A.C.'s IEP. (*Id.* (citing *Sellers*, 141 F.3d at 529)). Thus, the Court held that Plaintiff did not adequately allege a claim under the Rehabilitation Act in Count II and granted the Plaintiff leave to amend her allegations as to Count II and to file an amended complaint, pursuant to Federal Rule

of Civil Procedure 15. (*Id.* (citing *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001).)

Much of Plaintiff's allegations raised in the Amended Complaint are verbatim recitations of the allegations presented in the original Complaint.[4] To the extent Plaintiff does present new allegations, however, such allegations do not allege any sort of bad faith or gross misjudgment. In her Amended Complaint, Plaintiff asserts that on an occasion, Defendant "intentionally and willfully violated the mandate requiring parental participation" when it "unilaterally" scheduled an IEP meeting to take place without the parents because they were traveling abroad. (Am. Compl. ¶¶ 131–35.) On another occasion, A.C. claims Defendant "provided inappropriate and inadequate testing" when evaluating her in early 2019. (*Id.* ¶ 136.) Plaintiff also claims Defendant "intentionally failed and willfully refused" to create an IEP team consistent with procedural safeguards and that the IEP composition was inadequate because Defendant did not include an audiologist, dyslexia specialist, or a specialist in writing goals as part of Plaintiff's IEP team. (*Id.* ¶¶ 137–38.) A.C. asserts that her IEPs were not reasonably calculated to provide meaningful benefit and denied her of a FAPE. (*Id.* ¶¶ 139–40.) Plaintiff further claims Defendant acted with bad faith or gross misjudgment by committing "serial acts and omissions." (*Id.* ¶¶ 140–76.) Such "serial acts and omissions" include Defendant's

---

[4] Defendant's Memorandum in Opposition of Plaintiff's Motion to Dismiss includes a side-by-side table which shows where 42 individual paragraphs from Plaintiff's allegations in her original Complaint are the same as in her Amended Complaint. (Def.'s Mem. in Supp. at 3–4, ECF No. 25.) The Court has verified the duplicative nature of Plaintiff's Complaint and Amended Complaint.

alleged lack of response to A.C.'s requests for progress data (*id.* ¶ 145), a modification to specific educational goals (*id.* ¶ 174), and a peer-reviewed program specific to A.C.'s reading needs (*id.* ¶ 151). Plaintiff raises other claims whereby she asserts Defendant "should have known" that A.C.'s IEP was inadequate. (*Id.* ¶ 140.) As with the original Complaint, Plaintiff does not describe how any of these acts create a reasonable inference of bad faith or gross misjudgment. Attaching the words "intentionally" or "willfully" to an allegation alone is insufficient.

Moreover, Plaintiff dedicates over a page of her brief to a block-text quote from an unpublished opinion to presumably show her allegations are similar to those of the plaintiff in that case, and that her allegations also state a claim under Section 504. (Pl.s' Mot. in Opp'n at 1–3, ECF No. 28; *Charlotte-Mecklenburg Bd. of Educ. v. B.H.*, No. 3:07cv189, 2008 WL 4394191, at *1 (W.D.N.C. Sept. 24, 2008).) Not only is this opinion from another district, but a closer reading of the case supports the finding that Plaintiff in this case fails to state a claim. In *Charlotte-Mecklenburg*, the defendant school board allegedly did not evaluate the child plaintiff for two full years and did not evaluate him for "other health impairments" or for "speech-language or occupational therapy" for four years. 2008 WL 4394191, at *20. Yet, in this case, Plaintiff's own allegations show Defendant recommended a Section 504 plan roughly two months after she enrolled at Defendant's school (Am. Compl. ¶¶ 5, 10–11), and Defendant created an IEP three months later (*id.* ¶ 19). While Plaintiff's Amended Complaint challenges the quality and efficacy of the IEP and steps taken by Defendant, Plaintiff does not detail the

10

kind of inaction present in *Charlotte-Mecklenburg*. Rather, Plaintiff's claims amount to allegations of negligence and that the IEP was substantially deficient, which are not enough to plead a Section 504 claim. *See Sellers*, 141 F.3d at 529. In the full context of the entire Amended Complaint, the Court cannot interpret any of Plaintiff's allegations as showing bad faith or gross misjudgment in the creation and implementation of A.C.'s IEP. *See id.* Thus, Plaintiff does not adequately allege a claim under the Rehabilitation Act in Count II and the Court will grant the Motion to Dismiss.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss (ECF No. 24) Count II.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Sept. 13, 2022
Richmond, Virginia

11